## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| DIANE MAY WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2165-CM |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff filed this action pursuant to Title II of the Social Security Act, 42 U.S.C. § 401,
requesting the court to review the decision of the Administrative Law Judge ("ALJ") dated January
10, 2010, finding that plaintiff was not entitled to disability benefits.  Plaintiff contends that the ALJ
erred in his findings at Step Two of the five-step sequential evaluation process and in the weight
given to his treating physician.  The court makes the following findings.

### I.    Procedural Background

Plaintiff originally filed an application with the Social Security Administration for disability
benefits on July 29, 2008, alleging disability beginning on February 8, 2008.  After plaintiff's
application and request for reconsideration were denied, plaintiff requested, and was granted, an
administrative hearing.  The ALJ, Mark Dawson, issued his opinion on January 10, 2010, denying
plaintiff's application.  Plaintiff requested review on appeal; and on February 23, 2011, the Appeals
Council denied plaintiff's request.  Therefore, the decision of the Appeals Council serves as the final
decision of the Commissioner.  Plaintiff's request for this court's review is proper and timely.

## II.     Legal Standard

This court reviews "'the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). "'Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). The court "'may not reweigh the evidence or substitute its judgment for that of the agency.'" *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (quoting *Kelly v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). Further, this court must examine the entire record, which includes any evidence that may detract "from the weight of the Commissioner's decision," and must "'determine if the substantiality of the evidence test has been met.'" *Jarmillo v. Massanari*, 21 F. App'x 792, 795 (10th Cir. 2001) (quoting *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

It is plaintiff's burden to prove "a disability within the meaning of the Social Security Act." *Hunter*, 321 F. App'x at 792 (quotation omitted). A disability "'requires both an inability to engage in any substantial gainful activity' and 'a physical or mental impairment, which provides reason for the inability.'" *Id.* (quoting *Barnhart v. Walton*, 535 U.S. 212, 217 (2002)). Impairment, as defined under 42 U.S.C. § 423(d)(1)(A), is a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

It is the responsibility of the ALJ to thoroughly conduct a five-step sequential process when reviewing claims for disability under the Social Security Act. *Williams v. Bowen*, 844 F.2d 748, 750

(10th Cir. 1988) (citing *Bowen v. Yuckert*, 482 U.S. 137 (1987)). If a determination is made at any of the steps regarding plaintiff's disability status, then further evaluation under subsequent steps is not necessary. *Id*.

At step one, plaintiff must demonstrate that she is not engaged in substantial gainful employment activity. *Id*. If plaintiff makes a showing at step one that she is not substantially gainfully employed, then the ALJ moves to step two, which requires plaintiff to demonstrate that she has a "medically severe impairment or combination of impairments" that severely limit her ability to do work. *Id*. (quotation omitted). The ALJ can make a nondisability determination if there is no more than a minimal effect on plaintiff's ability to do work as a result of his impairments. However, if there is a sufficient showing that plaintiff's impairments are more than minimal, the ALJ moves to step three of the evaluation. At step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id*. If the impairment(s) can be found on the list, then the ALJ makes a disability finding; if an impairment is not listed, the ALJ moves to step four of the evaluation. *Id*.

Prior to step four, the ALJ assess plaintiff's Residual Functional Capacity ("RFC"). *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). At step four, it is plaintiff's burden to show that she cannot perform his past work. *Williams*, 844 F.2d at 750. The burden shifts to the ALJ at step five, where the ALJ must show that plaintiff can perform some work which exists in large numbers in the national economy. *Id*.

**III.    Analysis**

**A.      The Administrative Decision**

The ALJ conducted a hearing where he and plaintiff's counsel asked questions of plaintiff and a Vocational Expert ("VE").  The ALJ then issued his decision, determining that plaintiff had not engaged in any substantial gainful activity since the alleged onset disability date of February 8, 2008.  (R. at 21.)  Based on evidence in the record, the ALJ found that plaintiff suffers from the following severe impairments, having more than a minimal effect on plaintiff's ability to perform work but does not meet or medically equal one of the listed impairments either singly or in combination:

> (1) Bipolar disorder, (2) Generalized anxiety disorder, (3) Avoidant personality disorder and (4) Blindness in oculus dexter or right eye and 20/40 in oculus sinister or left eye (20 CFR 404.1520(c) and 416.920(c)).

(*Id.* at 13.)  The ALJ determined that plaintiff's hereditary tremors were not severe, and noted this in the RFC determination.  The ALJ considered plaintiff's mental impairments but found that they do not meet or medically equal a listing under 12.04, 12.06 and 12.08 of the adult mental disorders under 12.00 of the Listing of Impairments (SSR 96-8p).  Additionally, the ALJ found that the paragraph B and C criteria of the adult mental disorders under 12.00 was not satisfied.

In determining plaintiff's RFC, the ALJ determined that plaintiff can:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: moderate restrictions in activities of daily living causing the claimant to miss 1 to 2 days a month from work, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and the environmental limitation of no job requiring binocular vision.

(*Id.* at 15.)  Based on the evidence in the record and testimony at the hearing, the ALJ found that although plaintiff could not return to her past relevant work as a data entry clerk or telephone solicitor, plaintiff would be able to perform other work existing in significant numbers in the national economy.   Therefore, plaintiff did not meet the requirements of disability under the Social

-4-

Security Act at any time from February 8, 2008 through the date of the decision. (*Id*. at 19–20.)

**B.    Plaintiff's Claims**

Plaintiff argues that the ALJ erred by: (1) failing to determine that plaintiff's tremors, migraines, asthma and obesity were severe; and (2) failing to give controlling weight or deference to plaintiff's treating physician Dr. Russell King.

1.    <u>Error in Failing to Properly Determine Plaintiff's Severe Impairments at Step Two</u>

Plaintiff claims the ALJ failed to find her tremors, asthma, migraine headaches and obesity to be severe impairments. Plaintiff argues that the effect of these impairments has more than a limiting effect on her daily activities, and that there is sufficient evidence in the record, in addition to a diagnosis by her treating physician, to warrant a finding that these impairments were severe. To support her position, plaintiff directs the court to specific evidence in the record for each impairment.

Plaintiff first points to Dr. King's January 2010 questionnaire and report, where Dr. King noted that it was likely plaintiff would miss some work each month as a result of her migraines. (Doc. 10 at 10.) And, following a June 3, 2008 appointment, Dr. King reported that plaintiff experienced "coughing and shortness of breath that was waking her up at night," as evidence of the severity of her asthma *Id*. Plaintiff also offers her own testimony at the disability hearing as further evidence of the severity of her asthma and migraines. She must sometimes use a nebulizer to control her asthma symptoms, in addition to taking medication and lying in a dark quiet room during her migraine episodes. *Id*.

As it pertains to plaintiff's tremors, plaintiff cites to Dr. King's diagnosis of an essential tremor after she demonstrated an uncontrollable tremor in her right hand at an appointment in March, 2008. (Doc. 10 at 9.) In her disability questionnaire, plaintiff asserts that her tremor becomes worse

under stress, and that she often experiences difficulties holding a cup, writing, and typing. *Id*.
Finally, plaintiff argues that the ALJ should have discussed the effects of obesity on her "exertional,
postural, and social functions" required by Social Security Ruling 01-01p because she has been
overweight dating back to the date of the onset of her disability. (*Id*. at 11.)  Plaintiff cites to the
multiple instances in the record where her weight was noted during doctor's visits.

   This court's duty is not to usurp the role of the ALJ, even if the court disagrees with the
decision, but rather to determine whether substantial evidence supports the ALJ's findings. *Kelly*,
F.3d  at 337.  A physical or mental impairment must be established by medical evidence "consisting
of signs, symptoms, and laboratory findings, not only by [plaintiff's] statements." 20 C.F.R. §§
404.1508, 1509.  It also must have lasted or be expected to last for a "continuous period of at least 12
months." *Id*.  The court gives considerable deference to the ALJ's credibility determination,
*Stephens v. United States Dep't of Health & Human Servs.*, No. 93-5145, 1993 WL 498168, at *1
(10th Cir. Dec. 2, 1993) (citation omitted), as long as the ALJ's credibility determination is linked to
substantial evidence in the record, and "not just a conclusion in the guise of findings," *Huston v.
Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998).

   Unless an impairment significantly limits a person's ability to walk, stand, sit, carry,
comprehend simple instructions, respond to work conditions, and deal with changes in her routine
work environment, the impairment is not severe. *Bronson v. Astrue*, 530 F. Supp. 2d 1172, 1177–86
(D. Kan. 2008) (citing 20 C.F.R. §§ 404.1521, 416.921).  Plaintiff need only make a "de minimus
showing," demonstrating that the impairment "would have more than a minimal effect on her ability
to do basic work activities." *Id*. (citations and quotations omitted).  Plaintiff, however, must
demonstrate that there is more to the impairment than a "mere presence of a condition or ailment."

*Id.* If plaintiff's impairment does not have a serious impact on her abilities to do basic work activities, it will not be considered a severe impairment. *Id.* (citing *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997)).

An error at step two of the evaluation process can be harmless as long as the ALJ finds some severe impairment or combination of impairments and proceeds to step three. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). However, an error at step two may not be harmless if it affects the ALJ's findings at steps four and five, when the ALJ must: (1) consider "both severe and non-severe medically determinable impairments," and (2) pose any hypothetical questions to the VE "reflect[ing] with precision all–and only–the impairments and limitations borne out by the evidentiary record." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)).

Prior to step four of the evaluation process, the ALJ must determine plaintiff's RFC, which is used to "determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200(a). Pursuant to 20 C.F.R. § 404.1545(e), the ALJ is required to consider all medically determinable impairments, whether severe or non-severe, when making an RFC assessment, and to "consider a claimant's abilities to meet the demands of work despite her impairment(s)." *Luzier v. Astrue*, No. 10-1186-JWL, 2011 WL 2470243, at *4 (D. Kan. June 20, 2011) (citing 20 C.F.R. § 404.1545). Not doing so can be considered reversible error. *Dainty v. Astrue*, No. 10-1245-SAC, 2011 WL 4072548, at *3 (D. Kan. Sept. 13, 2011). The ALJ is to consider physical abilities such as "sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions, and responding appropriately to

supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments." *Henderson-Harrison v. Astrue*, No. 10-1218-JWL, 2011 WL 146485, at *4 (D. Kan. Apr. 18, 2011) (citing 20 C.F.R. §§ 404.1545(b, c, d), 404.1521). Pursuant to SSR 96-8p, when completing the RFC assessment, the ALJ must cite to medical and nonmedical evidence, discuss plaintiff's credibility regarding symptoms, resolve ambiguities between the evidence and plaintiff's claims of pain, and discuss medical source opinions from treating or agency physicians and the weight given to each source. *Luzier*, 2011 WL 2470243, at *4.

After considering the evidence in the record, including the VE testimony at the administrative hearing, the ALJ considered plaintiff's hereditary tremors, but did not find them to be severe.[1] Further, he noted that his RFC determination accommodated any limitations that might have been caused by the tremors.  Next, the ALJ did not specifically discuss plaintiff's allegations of migraines, asthma or obesity as impairments when making his findings at step two.  However, he did discuss plaintiff's complaints of migraines and asthma when he reviewed the opinions of examining nontreating sources.  He stated that although plaintiff reported a 30-year history of migraine headaches, there was a lack of evidence supporting the severity of the condition, and that the Depakote sufficiently controlled plaintiff's migraine episodes.  (R. at 18.)  The ALJ also noted a lack of evidence of hospitalization or pulmonary impairment pertaining to plaintiff's reported 11-year history of asthma.  *Id.*

Finally, plaintiff argues that the ALJ erred by not finding plaintiff's obesity to be an

_____

[1]  During the administrative hearing, plaintiff's attorney questioned the VE regarding the nature of work as a production worker with respect to the requirement of fine fingering.  The VE testified in response to the ALJ's hypothetical that if fine fingering was required for either of the two jobs identified that plaintiff could perform, packaging and assembly work, a mild tremor would affect plaintiff's ability to do both jobs.

impairment and discussing it in the RFC assessment.  While it is true, the ALJ shall consider obesity in plaintiff's RFC assessment as it applies to functional limitations pursuant to SSR 02-1p, there is little evidence present in the record supporting plaintiff's claim that her obesity was a medically determinable impairment which would limit her ability to do work.  In fact, the limited evidence in the record of plaintiff's obesity includes one notation on a record from a visit to Providence Medical Center on August 10, 2006, and mere notations on plaintiff's records of her weight at appointments throughout her medical appointment history.  (R. at 392.)  The record does not establish an assertion by plaintiff that she presented claims of obesity during doctor's visits as valid reasons for her disability, nor did she present obesity as a claim of disability to the ALJ.  It is not unreasonable that the ALJ did not consider obesity in his decision.  *See Briggs v. Astrue*, 221 F. App'x 767, 770–71 (10th Cir. 2007) (claimant failed to address obesity in disability application or in the hearing, therefore the ALJ did not improperly fail to consider the lack of obesity evidence as a result).

The ALJ thoroughly reviewed the record, and contemplated all evidence regarding identifiable impairments.  The ALJ made appropriate credibility determinations of plaintiff's claims pursuant to evidence in the record.  This court will rarely disturb the ALJ's findings of credibility absent an opinion unsupported by evidence in the record.  *Diaz v. Sec'y of Health & Human Servs*., 898 F.2d 774, 777 (10th Cir. 1990).  After reviewing the record, the court believes that evidence supports the ALJ's determination not to include hereditary tumors, migraines, asthma and obesity as severe impairments hindering plaintiff's ability to work.  The ALJ properly analyzed evidence from the record as well as testimony by the VE at the administrative hearing, made proper credibility

determinations based on that evidence, and determined plaintiff's RFC.[2]  Additionally, evidence suggests that plaintiff's ability to perform daily tasks was not limited by these impairments.  The court finds no error at step two of the ALJ's analysis.

However, even if the ALJ committed error at step two by not finding migraines, asthma, obesity and tremors to be severe impairments, it can be considered harmless error.  The ALJ did not find plaintiff to be not disabled at step two, but rather he found plaintiff to have a combination of severe impairments and moved on to step three.  *See Carpenter*, 537 F. 3d at 1266.  Additionally, the ALJ determined that plaintiff's history of asthma did not limit plaintiff's ability to do work.  And, although the ALJ determined plaintiff's history of tremors and migraines were not severe, he posed any limitations by both impairments to the VE in the administrative hearing.  He then incorporated these considerations in the RFC determination.

Finally, regarding plaintiff's obesity, as stated above, there is little evidence that plaintiff's obesity was an impairment limiting her ability to do work.  Plaintiff has not met her burden of demonstrating that the ALJ committed error at step two.  Further, if he did commit error, it was harmless error.

2.      Error in Failing to Give Controlling Weight or Considerable Deference to

Plaintiff's Treating Physician

Plaintiff claims that the ALJ specifically ignored portions of treating physician Dr. Russell King's opinion that were supportive of a disability finding.  (Doc. 10 at 14.)  She argues that an ALJ is required to give deference to the treating physician's opinion regardless of whether he gave it

---

[2]  The VE opined that plaintiff would still be able to perform the jobs of production assembler and hand packager even if plaintiff were to miss one to two days per week due to a migraine episode.  Additionally, the VE testified that someone with a mild hand tremor would likely not be able to perform the tasks of production assembler or hand packager.

controlling weight if the ALJ properly assessed the opinion using the six factors pursuant to 20

C.F.R. §§ 404.1527(d) and 416.927(d).  These factors include:

> (1) length and frequency of the treatment relationship; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization of the treating source; and (6) other factors that would lend support or contradict an opinion.

*Id*.  By not properly analyzing Dr. King's opinion using these six factors, plaintiff claims the ALJ

committed reversible error.

Plaintiff asserts that Dr. Mary Matzeder's consultative examination opinion supports Dr.

King's opinion.  More specifically, Dr. Matzeder opined that plaintiff's emotional status might

negatively affect plaintiff's ability to maintain employment.  (Doc. 10 at 15.)  Plaintiff further argues

that the ALJ failed to rely on Dr. Jeffery Duncan's consultative examination opinion.  Dr. Duncan

was a non-examining state agency physician.  According to plaintiff, opinions from sources other

than treating sources may never be given controlling weight, but rather deserve little weight.

According to regulations, the ALJ must give "controlling weight" to a treating physician's

medical opinion when it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the plaintiff's]

case record."  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quotation omitted).  If the ALJ

does not give controlling weight to the treating physician, he must consider it, in addition to all of the

medical opinions, using the factors listed above pursuant to 20 C.F.R. §§ 404.1527 and 416.927, and

give deference to the treating source opinion accordingly.  *Degand v. Astrue*, No. 10-1387-JWL,

2011 WL 5837235, at *3 (D. Kan. Nov. 21, 2011).  But, if the treating physician's opinion is not

supported by substantial evidence in the record, the ALJ may disregard it.  *Id*. (citing *Castellano v.*

*Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).  However, the ALJ is

required to give "specific legitimate reasons" for disregarding a treating physician's medical report. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (additional quotation omitted)).

In considering all of the medical source opinions, the ALJ should afford more weight to nontreating source opinions than opinions by nonexamining sources who have simply reviewed the record and issued an opinion on the record alone. *Degand*, 2011 WL 5837235, at *3 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) (additional citations omitted)). And, evaluation forms without support from objective testing, "written reports," or "persuasive testimony" cannot be considered substantial evidence. *Id*. Nonetheless, the findings of a nontreating physician can be suspect and unreliable. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

The ALJ treated Dr. King's January 6, 2010 Physical Residual Mental Functional Capacity Questionnaire as a treating source opinion. The ALJ assigned the opinion partial weight based on the manner in which Dr. King described claimant's impairments, but assigned it limited weight based on the effect those impairments had on plaintiff's ability to perform work when analyzing evidence in the record as a whole. (R. at 18.) The ALJ next analyzed each additional medical opinion based on whether it was authored by a nontreating source, specifically Drs. Duncan and Matzeder, or a State Agency consultant/nonexamining expert source, specifically Drs. Mitchell, Warren, Warrender and Adams. The ALJ assigned significant weight to the opinions of Drs. Duncan, Mitchell, Adams, and Warrender, considering them to be consistent with the medical evidence in the record.

However, after thoroughly reviewing the ALJ's opinion, the court can find no specific

discussion or analysis of the factors set forth under 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The court cannot provide meaningful review of the ALJ's opinion if there are no findings supported by evidence to review.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  Further, the court should not speculate as to what specific evidence led the ALJ to its conclusion.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  With no discussion by the ALJ regarding his analysis of the factors in relation to all of the medical opinions, the court cannot make a meaningful review of why the ALJ gave the opinions the weight he assigned.  The court, therefore, must remand the case for further review of the medical opinions, including analysis the specific factors set forth under 20 C.F.R. §§ 404.1527(d) and 416.927(d).

## IV.    Conclusion

Based on a thorough review of the record and the ALJ's decision, the court remands the Commissioner's decision for review consistent with the court's findings above.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is reversed and remanded for further consideration by the ALJ consistent with this order.  Judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 13th day of August, 2012 at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**

-13-